Rockingham, }
　June, 1894. }

## Scott, *Adm'x*, v. Scott, *Ex'x*.

If the holder of stock gives a writing to an administratrix, declaring that it belongs to the estate of the deceased and promising to transfer it to her on request, the illegal purpose of the transfer from the deceased to him is not a defence to a bill in equity by her to enforce his promise.

Bill in Equity, to compel a transfer to the plaintiff of ten shares of the capital stock of the Portsmouth Brewing Company standing in the name of Mark A. Scott, and alleged to have been held by him in trust for George Scott. The plaintiff is administratrix of the estate of George Scott, and the defendant is executrix of the will of Mark A. Scott. Facts found by the court.

The corporation was organized under the general laws for the purpose, as stated in the articles of association, "of manufacturing, brewing and exporting from the state of New Hampshire, for lawful sale and consumption, beer, ale and other malt liquors by whatever name called, and for making malt, casks and barrels, and carrying on all other lawful business connected therewith," in Portsmouth, New Hampshire. Its capital stock is divided into eighty shares of $500 each. The object of its incorporation was, and its business has been and is, the manufacture of intoxicating malt liquors, and the selling of the same in this state and elsewhere.

The stock in controversy was held by Mark A. Scott in trust for the benefit and use of George Scott, to whom it belonged, and to whom Mark was to transfer it whenever requested. It was originally placed in Mark's name to evade the law (G. L., c. 148, s. 18) prohibiting stockholders from voting on more than one eighth of the whole number of shares in the corporation (George then owning ten other shares), and also to evade a by-law of the corporation requiring ownership of stock to enable one to be a director (George desiring Mark to be a director).

There were at the time two factions among the stockholders,—
one led by Arthur Harris, to which George belonged; and the
arrangement of George's stock, as above stated, was one means
by which the Harris faction secured control of the corporation.
George and Mark were both directors for a number of years
prior to their deaths, and knew what business the corporation
was engaged in. Mark was treasurer during the last nine years
of his life, and as such was general manager of the corporate
business.

After George's death Mark executed and delivered to the
plaintiff a writing under seal in which he acknowledged and
declared that the stock standing in his name did not belong to
him, but was a part of George's estate, for the benefit and to the
use of which he held it, and promised and agreed to transfer the
stock to the estate, or to the plaintiff as administratrix, on re-
quest. Soon afterward the plaintiff requested Mark to transfer
the stock to her, but he did not do it. She has had no actual
control of the stock, and has taken no active part in the business
of the corporation, but has known what it was, and has not ob-
jected to it.

The certificates for the stock were impounded with the clerk
of the court by an order made in an equity suit, *Harris* v. *Scott,*
*Adm'x.* The defendant refused to transfer the stock to the plain-
tiff, although requested so to do; and alleged as matter of defence
to the present suit, the nature of the corporate business, the way
in which it was managed, and the illegality of the transfer of
the stock in question.

*Calvin Page* and *Frink & Batchelder*, for the plaintiff.

*Thomas E. O. Marvin* and *Samuel W. Emery*, for the defendant.

BLODGETT, J. Whatever view may be taken of the transaction
between the deceased in respect of the stock in controversy, or of
the corporate business, the defence in this case cannot be sus-
tained. The fact that the stock was put to an unlawful use did
not devest it of its character as property, or place it outside the
protection of the law; nor does the plaintiff require the aid of
any illegal transaction to establish her right to its recovery.
Her cause of action is not founded upon her intestate's transfer
of the stock to the defendant's husband for an unlawful use,
which has, however, ceased, but upon the subsequent acknowl-
edgment and agreement of the husband to and with the plain-
tiff that the stock belonged to her intestate's estate, and that he
would assign and convey it to the estate, or to herself as its rep-
resentative, upon her request. Certainly this agreement was not
illegal. No vice or taint in the original transaction entered into
or attached to it, and it was made upon sufficient consideration.

The only ground upon which the defendant seeks to be relieved from it is, that the transfer was made and the stock used in furtherance of an unlawful enterprise in which the deceased were mutually engaged. But she is not entitled to relief upon this ground. As the representative of her husband, she cannot set up his crime in order to defeat the plaintiff's recovery. She stands in his place and has his rights, but no more. *Fletcher* v. *Grover*, 11 N. H. 368, 369. His infamy cannot be her defence. It is forbidden by every consideration of law, justice and fair-dealing, and no less by a decent regard for his reputation and memory.

But it is not necessary to apply the principle embodied in the maxim, "No man shall set up his infamy as a defence." The same result follows from the consideration of the existing situation. A paper representing property is impounded with the court. A and B both claim it. The paper title of the property is in A, but the trial court has found upon competent evidence that the property belongs to B. One or the other of them is entitled to the impounded paper. The sole question is, which has the better right? It can hardly be necessary to say that the question is not an open one. The finding of the trial term conclusively establishes B's right to the paper; and with the possession goes the accompanying incidental right to such an assignment of it by A as may be necessary for B's beneficial use and enjoyment of it.

Other grounds debarring the defendant suggest themselves (*Railroad* v. *Railroad*, 66 N. H. 100, 126, 127, 131, 133), and still others have been suggested in argument; but her claim to the property in controversy is so vicious in its character and tendency, and so repugnant to all just notions of right and equity, that it is unnecessary to pursue the subject farther.

The plaintiff is entitled to the possession of the certificates now impounded with the clerk of the court and to an assignment of the same to her by the defendant.

*Decree accordingly.*

CHASE, J., did not sit: the others concurred.